UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN CAMILLE CULLIN,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

CIVIL ACTION NO. 12-10279

DISTRICT JUDGE ROBERT H. CLELAND

MAGISTRATE JUDGE MARK A. RANDON

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Susan Camille Cullin challenges the Commissioner of Social Security's ("Commissioner") final denial of her benefits application. Cross motions for summary judgment are pending (Dkts. 10 & 11); Judge Robert H. Cleland referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. 2). Plaintiff responded to the Commissioner's motion (Dkt. 12).

**I. RECOMMENDATION**

Because the ALJ failed to adequately explain why he discounted the opinions of Plaintiff's treating source physicians, this Magistrate Judge **RECOMMENDS** that the Court **GRANT** Plaintiff's Motion for Summary Judgment (Dkt.10), **DENY** Defendant's Motion for Summary Judgment (Dkt. 11), and **REMAND** the Commissioner's decision.

**II. REPORT**

***A. Administrative Proceedings***

Plaintiff applied for benefits on April 25, 2008, alleging that she became unable to work on April 1, 2005 (Tr. 64). At the hearing, Plaintiff amended her alleged disability onset date to December 25, 2008 (Tr. 64). The Commissioner initially denied Plaintiff's application (Tr. 64). Plaintiff requested a hearing and appeared with counsel before Administrative Law Judge ("ALJ") Paul R. Armstrong, who considered the case *de novo*. The ALJ found that Plaintiff was not disabled (Tr. 64-75). Plaintiff requested an Appeals Council review of this decision (Tr. 5). On November 16, 2011, the ALJ's decision became Commissioner's final decision when the Appeals Council declined further review (Tr. 1-3).

***B. ALJ Findings***

Plaintiff was 52 years old on her amended disability onset date (Tr. 10). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since April 25, 2008, the date she applied for SSI benefits (Tr. 66).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: bipolar disorder, anxiety disorder, polysubstance abuse, chronic obstructive pulmonary disease, lower back pain and history of seizure disorder (Tr. 66).

At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or medically equaled one of the listings in the regulations (Tr. 66-68).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work...but...limited to simple, unskilled work" (Tr. 68).

At step four, the ALJ found that Plaintiff did not have any past relevant work (Tr. 73).

At step five, the ALJ denied Plaintiff benefits, finding that Plaintiff could perform a significant number of jobs available in the national economy, such as hand packager or small product assembler (2,500 of each job in southeastern Michigan) (Tr. 74).

### *C. Administrative Record*

#### 1. Plaintiff's Hearing Testimony and Statements

Plaintiff testified that she came from a wealthy family; she inherited "over a million dollars" after her father passed away (Tr. 15-17). Plaintiff wasted her inheritance on what she characterized as an "expensive lifestyle," that included years of drug abuse (Tr. 17). In 1993, she was involved in a car accident, in which her husband was killed (Tr. 17). Plaintiff suffered a broken pelvis and head injury; 10 inches of her lower intestine and appendix were removed. (Tr. 17). Plaintiff testified that she still suffers from back pain (Tr. 18).

Plaintiff was a long-time IV drug user[1] and contracted Hepatitis (Tr. 19). At the time of the hearing, she was not taking Interferon, as her doctor told her that the side-effects negatively impact her depression and bipolar disorder (Tr. 19); she was taking Geodon (an anti-psychotic used to treat bipolar disorder), Seroquel (also an anti-psychotic), Celexa (an antidepressant), Klonopin (an antianxiety/sedative drug), Flexeril (a muscle relaxant) and Ibuprofen (an anti-inflammatory drug) (Tr. 36).

Plaintiff stated that she thinks she could work part-time, but that her emotional instability would preclude her from full-time employment (Tr. 36-37). Plaintiff does not drive, as her driver's license was suspended (Tr. 31). Plaintiff testified that she has never been arrested for DUI (drunk driving), but she had been involved in "four car accidents within a year" and did not think she could pass the driver's test due to the side-effects of her prescription medications (Tr. 31). A friend takes Plaintiff grocery shopping, but she can do her own cooking and cleaning (Tr. 31-32).

#### 2. Medical Evidence

[1] Plaintiff's attorney represented that the last time Plaintiff used IV drugs was December 25, 2008 (Tr. 9).

At the hearing, Plaintiff amended her alleged disability onset date to December 25, 2008 – the date that she last used IV drugs (Tr. 9).[2] Accordingly, medical evidence before December 25, 2008 is of limited relevance to the Court's review and will not be summarized in detail.

**i) Physical Impairments**

Plaintiff has treated with Dr. Yeva Soskina since February 2007 (Tr. 718-738, 770-801, 1159-1160). Dr. Soskina's handwritten treatment notes are largely illegible, a fact noted by the ALJ (Tr. 72). Thus, Plaintiff's entire course of treatment with Dr. Soskina is difficult to discern. The record does reflect that Dr. Soskina diagnosed Plaintiff with radiculopathy, back pain, asthma, anxiety, depression and bipolar disorder (Tr. 716). Dr. Soskina completed a physical RFC assessment form on March 19, 2009, indicating that Plaintiff was incapable of lifting even five pounds, due to her back pain (Tr. 764).

On June 10, 2010, Plaintiff underwent a spine MRI, which revealed bulging discs at L1-2 and L3-4, herniated discs at L4-5 and L5-S1 and probable L5 nerve root impairment (Tr. 1160). Shortly after this MRI, Plaintiff underwent a consultative examination with a State Agency physician, Dr. L. Patel (Tr. 1162-1164). Dr. Patel noted Plaintiff's "history of back pain," and "COPD, chronic bronchitis, anxiety and panic disorder, seizures in the past, [and] head injury" (Tr. 1162). Dr. Patel completed a form regarding Plaintiff's physical abilities, indicating that Plaintiff could occasionally lift and carry up to 50 pounds; sit for eight hours per day; stand for four hours per day; and perform all other postural activities[3] (except that she could only occasionally climb ladders or scaffolds) (Tr. 1166-1173). However, in his written narrative, Dr.

---

[2] The ALJ noted that, even if Plaintiff were disabled before December 25, 2008, her IV drug abuse would "undoubedly be material to the disability determination and the Social Security Administration would be legally prohibited from paying disability benefits" (Tr. 69). *See* 42 U.S.C. § 1382c(a)(3)(J).

[3] Such as climb stairs, balance, stoop, kneel, crouch or crawl (Tr. 1171).

Patel indicated that Plaintiff "should be able to work 4-6 hours a day," suggesting that she is limited to part-time work (Tr. 1164).

**ii) Mental Impairments**

Plaintiff was admitted to Havenwyck Hospital between January 10 and 19, 2008, after she took an overdose of pills (Tr. 534, 543). Her GAF score at the time was 20.[4] *Id*. On the day of admission, Dr. Prakash Sanghvi performed a physical examination and noted a history of chronic back pain, chronic obstructive pulmonary disease ("COPD"), and abdominal pain (Tr. 536). Dr. Sanghvi also noted lower back muscle spasms with a decreased range of motion (Tr. 537).

Shortly after admission, Dr. Yatinder Singhal performed a psychiatric evaluation (Tr. 543-544). Plaintiff reported that she was not functioning well, heard voices, and felt severely depressed, hopeless, and useless (Tr. 543). A drug screen was positive for marijuana (Tr. 534). She was nervous, tense, fearful, and scared and displayed a bland affect and decreased psychomotor activity (Tr. 543). Dr. Singhal diagnosed "bipolar depressed with psychotic features, severe" and alcohol abuse; Plaintiff was scheduled for several forms of therapy and prescribed medications (Tr. 544). She improved over the course of her stay, and on the date of

---

[4] The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky v. Comm'r of Soc. Sec*., 167 Fed. App'x. 496, 502 fn. 7 (6th Cir. 2006).

discharge, Dr. Singhal noted that she seemed to be doing much better and had a much more stable mood (Tr. 545-52).

Plaintiff was again admitted to Havenwyck on June 21, 2008, with complaints of severe depression, poor concentration, and suicidal feelings (Tr 568). She remained hospitalized until June 30, 2008; she was discharged with a GAF score of 42 (Tr 558-559).

On July 1, 2008, Plaintiff was examined by consultative psychologist Pamela Herringshaw, Ph.D (Tr. 505). Dr. Herringshaw diagnosed bipolar I disorder, most recent episode

depressed; generalized anxiety disorder; opioid dependence; and alcohol abuse (Tr 505). She assessed a GAF score of 50, adding, "[b]ased on [Plaintiff's] long history of mental, emotional and substance abuse problems the prognosis seems poor" (Tr 505).

In July 2008, Leonard Balunas, Ph.D., reviewed Plaintiff's medical records for the state DDS and created a report (Tr. 507-24). Dr. Balunas diagnosed bipolar syndrome, generalized persistent anxiety, and substance addiction (Tr. 510, 512, 515). He opined that Plaintiff had one or two episodes of decompensation, each of extended duration; moderate difficulties in maintaining concentration, persistence, or pace; and mild limitations in activities of daily living and social functioning (Tr. 517). Dr. Balunas concluded that Plaintiff could perform unskilled work involving one and two-step instructions with a limited need for sustained concentration (Tr. 523).

In March 2009, Dr. Yariagadda Prasad performed a psychiatric evaluation of Plaintiff at Training and Treatment Innovations ("TTI") (Tr. 740-43). Dr. Prasad noted that Plaintiff had been struggling with anxiety and depression since she was a teenager and was sexually abused by her father (Tr. 740). He also noted that Plaintiff had several psychiatric hospitalizations and in-patient treatment for use of crack cocaine, Soma (muscle relaxant), and Xanax (Tr. 740).

Plaintiff had been using heroin and other narcotics since 2004 (Tr. 740). Dr. Prasad concluded that Plaintiff's "insight and judgment have been poor" and "[h]er concentration and attention are poor" (Tr. 742).

In April 2009, Plaintiff presented to Dr. Prasad for a medication review and reported feeling "ok" (Tr. 987). Dr. Prasad noted no abnormalities on examination, except for impaired judgment; Plaintiff had adequate attention/concentration (Tr. 987-88). In June 2009, Plaintiff presented to Dr. Prasad and requested medication to help her sleep (Tr. 984). Again, Dr. Prasad noted no abnormalities on examination, except for impaired judgment; Plaintiff had adequate attention/concentration (Tr. 984-85).

In August 2009, Plaintiff returned to Dr. Prasad for medication management, and had no abnormalities on examination, except for impaired impulse control and judgment (Tr. 981-82). Dr. Prasad noted that she had adequate attention and concentration (Tr. 981). In September 2009, Plaintiff reported using opiates and crack cocaine and stated that a lack of money was the only thing "controlling" her drug use (Tr. 803, 805, 811). In October 2009, she admitted to using crack cocaine at least once a week (Tr. 1113). Later that month, Dr. Prasad performed a medication review and, expect for impaired impulse control and judgment, Plaintiff had no abnormalities (Tr. 1106-07).

In December 2009, Plaintiff returned to Dr. Prasad for medication management, and again had no abnormalities on examination, except for impaired impulse control and judgment (Tr. 1053-54). That day, Plaintiff told a social worker that she had no symptoms, but continued to have a detached feeling due to her medications (Tr. 1056). In January 2010, Plaintiff told a social worker that she had no symptoms or side effects (Tr. 1021).

In March 2010, Dr. Prasad performed a psychiatric evaluation of Plaintiff (Tr. 972-75). Dr. Prasad described Plaintiff's medications, and completed a section of the evaluation form

titled "Impressions/Diagnostic Formulation," using the same language as his March 2009 evaluation, including the conclusion that Plaintiff had poor insight, judgment, concentration, and attention (Tr. 972, 974).

Dr. Prasad completed a mental RFC assessment form on March 26, 2009; he reported that Plaintiff was markedly limited in several factors with respect to understanding and memory, sustained concentration and persistence, and adaptation (Tr 768).

**3. Vocational Expert**

During the hearing, the ALJ asked a Vocational Expert ("VE") a hypothetical question regarding what work could be performed by a person who was capable of light exertion and limited to simple, unskilled work with environmental limitations such as no concentrated exposure to fumes, odors, respiratory irritants, or extremes of temperature and humidity (Tr. 42). The ALJ added that the person could not operate automotive equipment, or work around unprotected heights, dangerous machinery, open flames, or bodies of water (Tr. 42). The VE testified that such a person could work as a hand packager, small products assembler or visual inspector, with a total of 6,000 jobs in southeastern Michigan (Tr. 42-43).

While questioning the VE, the ALJ noted that if Plaintiff was restricted to "sedentary" work, she would be considered disabled, as she has no prior relevant work and would "grid out" (Tr. 43).[5] The ALJ also asked the VE whether Plaintiff would be precluded from working if she needed to be off task for an average of 15 minutes every hour; the VE responded that such a limitation would preclude Plaintiff from competitive employment (Tr. 43). The VE responded

---

[5] The "grids," or Medical-Vocational Guidelines, can dictate a finding at step five of the analysis of "disabled" or "not disabled" based on a claimant's exertional restrictions, age, education, and prior work experience. *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir.1990).

that a limitation to part-time employment would also preclude Plaintiff from competitive employment (Tr. 43).

### *D. Plaintiff's Claims of Error*

Plaintiff raises several arguments on appeal. First, Plaintiff argues that the ALJ improperly weighed the opinion from one of Plaintiff's treating physicians (Dr. Soskina) or did not give "good reasons" for discounting the opinion. Second, Plaintiff argues that the physical consultative examiner's report (Dr. Patel) expressly limits Plaintiff to part-time work, thus supporting a finding of disability. Third, Plaintiff argues that the ALJ's conclusions regarding Plaintiff's mental impairments are not supported by substantial evidence; in particular, the ALJ erred in giving only limited weight to Plaintiff's treating psychiatrist (Dr. Prasad) and improperly rejected the opinions of the two medical consultative examiners (Drs. Balunas and Herringshaw). Fourth, Plaintiff argues that the ALJ's hypothetical question to the VE did not adequately account for Plaintiff's difficulties concentrating. Fifth, Plaintiff claims the ALJ erred in finding that Plaintiff was limited to "light" work, and then later concluding that one of the jobs Plaintiff could do was hand packager, which requires "medium" exertion. Finally, Plaintiff argues that the ALJ erred by finding at step two that Plaintiff's COPD was a "severe" impairment, but then not addressing COPD in the succeeding steps of the analysis.

## III. DISCUSSION

### *A. Framework for Disability Determinations*

Under the Social Security Act (the "Act") Disability Insurance Benefits and

Supplemental

Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*,

475

F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commisioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### *B. Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that

either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

***C. Analysis***

As noted earlier, Plaintiff raises several arguments on appeal. This Magistrate Judge finds that Plaintiff's arguments concerning the weight given to the opinions of her treating physicians and to the consultative examiners are well-taken. Because these arguments warrant remand, it is unnecessary to reach her additional arguments.

The treating-source rule generally requires an ALJ to give deference to the opinion of a claimant's treating source. In particular, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96–2p, 1996 WL 374188 (1996). And, where an ALJ finds that a treating physician's opinion is not entitled to controlling weight, he must then consider and apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a

treating physician to support his opinion, (4) “consistency of the opinion with the record as a whole,” and (5) “the specialization of the treating source.” *Id.*; 20 C.F.R. § 404.1527(c)(2).

Of particular relevance, the treating-source rule contains a procedural, explanatory requirement that an ALJ give “good reasons” for the weight given a treating-source opinion. *See e.g.*, *Wilson*, 378 F.3d at 544; *see also* S.S.R. 96–2p, 1996 WL 374188, at *5 (providing that a decision denying benefits “must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record”). The purpose for this procedural requirement is two-fold:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544 (internal quotation marks omitted); *see also* SSR 96–2p, 1996 WL 374188, at *5.

The ALJ began his discussion of Dr. Soskina’s opinion by observing that it was “somewhat supported by medically acceptable clinical and laboratory diagnostic techniques,” in particular, the June 2010 MRI that “revealed bulging discs at L1-2 and L3-4 and herniated discs at L4-5 and L5-S1 with probable [nerve] impingement at right L4 and left L5" (Tr. 72). The ALJ then noted that Dr. Soskina’s treatment notes are “largely illegible” and rejected Dr. Soskina’s opinion on two grounds: (1) the “largely unremarkable” July 2010 consultative examination (*i.e.*, Dr. Patel’s assessment); and (2) Plaintiff’s testimony (Tr. 72). This was error. Dr. Patel’s assessment concluded that Plaintiff “should be able to work 4-6 hours a day,” suggesting that she is limited to part-time work (Tr. 1164). The VE testified that a limitation to part-time employment would preclude Plaintiff from competitive employment (Tr. 43). The ALJ erred in

relying on a consultative examination – which itself suggested that Plaintiff was disabled – to discount the opinion of Plaintiff's treating physician.

The ALJ also concluded that Plaintiff's testimony about her back pain conflicted with Dr. Soskina's opinion (Tr. 72). The specific testimony reads as follows:

> Q Now about your back, can you walk okay?
>
> A It pulls like when I walk, so I have pain when I walk, but it's not excruciating enough where I have to be on pain medications all the time with it. There have been times in the past where I've re-injured it, where I had to be on pain medication.
>
> (Tr. 29-30)

This testimony does not conflict with Dr. Soskina's opinion as much as the ALJ believed. First, the ALJ's question began with the preface "[n]ow about your back," but then specifically asked Plaintiff if she could "walk ok." Plaintiff responded that her back pulled when she walked, but that *walking* did not cause pain that was excruciating enough to require pain medications "all the time." Plaintiff elaborated, stating that there were times when she did need to be on pain medication for her back. This testimony does not support the ALJ's broad conclusion that Plaintiff "did not need pain medication" (Tr. 72). As such, the ALJ's reliance on this testimony was not a sufficient basis to reject the opinion of Plaintiff's treating physician.

As to the illegibility of Dr. Soskina's treatment notes, this Magistrate Judge finds that the record was not sufficiently developed by the ALJ. In light of the ALJ's observation that Dr. Soskina's treatment notes were "largely illegible," it would have required little effort on his part to recontact the treating physician to determine the basis of his opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry "); *Miller v. Heckler*, 756 F.2d 679, 680-81 (8th Cir.

1985) (finding that the ALJ failed to develop evidence from the claimant's treating source where the record contained handwritten entries that were in large part illegible); 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered even when the claimant is represented by counsel); *see also Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981) (recognizing the need for full and detailed findings of facts essential to the ALJ's conclusion). As a general rule, the record will be considered "inadequate" or "ambiguous" when a treating source has provided a medical opinion that is not supported by the evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination") (citation omitted); *see also* SSR 96-5p (because treating source evidence is important, when a treating opinion is ambiguous, inconsistent, incomplete, or appears not to be based on objective findings, the ALJ must make 'every reasonable effort' to recontact the treating medical source for clarification). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001). On remand, the ALJ should recontact Dr. Soskina's office to resolve any perceived inadequacies and fully develop the record.

As to Plaintiff's mental impairments, the ALJ discounted the opinions of every physician in the record. An "ALJ may not substitute his own medical judgment for that of the treating

physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006), citing, *McCain v. Dir., Office of Workers Comp. Programs*, 58 Fed. App'x. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" and make their own independent medical findings). The ALJ stated that he rejected the opinion of Plaintiff's treating psychiatrist – Dr. Prasad – for the "same reasons" that he rejected the opinion of Dr. Soskina (Tr. 72). However, it does not appear that the ALJ conducted a full treating physician analysis of Dr. Prasad's opinion. In particular, the ALJ did not discuss: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship or the specialization of the treating source. Furthermore, the ALJ rejected Dr. Prasad's opinion (particularly his opinion as to Plaintiff's ability to maintain concentration) as unsupported by the treatment notes (Tr. 72); however, there are instances in Dr. Prasad's treatment notes where he reports that Plaintiff's concentration is "poor." As to the consultative examinations, the ALJ gave these opinions "limited weight" – including the opinion from Dr. Herringshaw, that concluded "[b]ased on [Plaintiff's] long history of mental, emotional and substance abuse problems the prognosis seems poor" (Tr 505) – because of the "relative age of these sources" (Tr. 72). In short, this Magistrate Judge cannot say that the ALJ's conclusions concerning Plaintiff's alleged mental impairments are supported by substantial evidence. A remand is warranted to reconsider Plaintiff's alleged mental impairments.

## III. CONCLUSION

Based on the foregoing, this Magistrate Judge **RECOMMENDS** that the Court **GRANT** Plaintiff's Motion for Summary Judgment (Dkt.10), **DENY** Defendant's Motion for Summary

Judgment (Dkt. 11) and **REMAND** the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. *See* Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: January 25, 2013

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 25, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*
*Case Manager*